Good afternoon, Your Honors, and may it please the Court. This is Ryan Carion on behalf of Appellant Michael Grecco Productions, Inc. I'd like to reserve approximately three minutes for rebuttal. I'd like to focus my remarks today primarily on the statute of limitations issue. This court should reverse the District Court's dismissal of MGP's amended complaint because the District Court incorrectly applied the reasonable diligence standard when A mere five months ago in Oracle American v. Hewlett-Packard Enterprises, this court not only reaffirmed the delayed discovery rule for applying the statute of limitations in copyright cases, but also specifically held that the correct standard for determining when a copyright holder should have known of an infringement is when the copyright holder had constructive knowledge of the facts giving rise to the claim. The constructive notice standard requires knowledge of facts of the type to prompt investigation of the specific defendant and which reasonably would lead to discovery of the infringement. General awareness that infringement occurs is simply not enough. Now a motion to dismiss based on the running of the statute of limitations may only be granted if it appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness of the claim. And in this case it is clear that appellant MGP sufficiently pledged in its amended complaint that it did not have actual or constructive knowledge that BDG Media was infringing prior to conducting a reverse image search of BDG Media's website bustle in October of 2016. In the amended complaint, MGP... Counsel, even if we were to agree with you with regard to the flashlight photo, how does that help you with regard to the hallway photo? You agree that the hallway photo was not mentioned in the initial complaint, right? Yes, Your Honor, it was not. And then when it was mentioned for the first time in the that it was more than three years before the first amended complaint. So if it doesn't relate back, it strikes me that you're out of court on the hall light photo. And explain to me why it ought to relate back when it's separate photos, separate infringements. Yes, Your Honor. So as Your Honor alluded to, we would invoke the relation back doctrine because the original complaint, the hallway photo. Now I think the relation back doctrine certainly applies because it relates to BDG Media's image policy, where they get these images from, how they use them. It certainly relates to BDG Media's policy for using intellectual property of others. But their policies aren't an issue unless they're infringing your copyright. And I understood your claim to be that they were infringing the flashlight photo copyright. So I don't know how that is related to the hallway photo copyright. Well, and even if this court is hesitant to invoke the relation back doctrine, we specifically pled in the amended complaint that the copy of the hallway photo was still on the server, even in the amended complaint. So... Counsel, do you have any case that stands for the proposition that the only way an infringer can stop the statute from having run is to sort of get rid of it? That even if you're aware of it and it stays up there every day, your view is that as long as it's up there, the statute never runs? Well, I believe that's the ALP microscope case, the federal claims court case that we cited. Now admittedly, you know, this is not an issue that arises quite frequently or really ever, hardly, has been litigated. So certainly, you know, there's not a ton of case law on it. But certainly, I think this court has to address the fact that these images both were available and posted on the BUSL website less than three years prior to the filing of the complaint. And in fact, some of them were still posted at the time that the complaint, the amended, excuse me, the original complaint was filed. And... Did you make the separate accrual argument that you've made to us in the district court? No, your honor. At the district court, we focused primarily on the reasonable diligence argument. That was the focus primarily of our brief on the appeal as well. Right. So your opponent, of course, argues that we should therefore not reach the issue. I'll just speak for myself. I think that's your most promising argument on this appeal. But maybe you can respond to the argument that you forfeited by not raising it in the district court. Certainly, your honor. So I think there's two responses to that. The first response is we have been litigating the statute of limitations issue since the district court. I mean, that's basically the sole issue on appeal. And so we're simply articulating, you know, different arguments supporting our argument that the statute of limitations has run. This is not a completely, you know, new claim. It's not like we're claiming relation back or statute of limitations for the first time on appeal. We're just simply clarifying and articulating our district court's second dismissal opinion. And the second point that I would make is that the parties agree that the review standard for this court is de novo. And so because it's de novo, we raised it in our opening brief. This court certainly can look to what the district court did and what the arguments were below, but it's not bound to accept that or give any deference to the district court. They can review it de novo. It's basically a mulligan, if you will. And so because we raised it in our opening brief and BDG Media has had an opportunity in their opposition brief to address it, it's been fully briefed. It's been fully considered. There's no factual issues because it's a 12B6 motion. So it's simply a pure question of law that this court is well positioned to decide if it decides that it wants to address that issue. Let me ask you one additional question on that same point. You do allege, as you said, that the photo remained on the defendant's server all the way up until the time you filed each of the two complaints. I don't think you made any allegations, though, that it was in fact being accessed by outside users. Is that something that you think can just be fairly inferred from the fact that it remained on the server? Or I don't know, what would you need to amend to add additional facts to beef up that part of the case? We certainly could amend to add those complaints, but I think it is fairly inferred. I mean, we were able to access it to include it as an exhibit. Right. And so I think that, you know, whether in terms of copyright infringement, the or whatever the violation is, it's really an issue of damages more than it is of infringement. I mean, certainly there's probably a lot of very unsuccessful infringers out there, but that doesn't mean that, you know, they're not infringing. And certainly, BDG Media, as we saw with the flashlight photo, they used that in two separate articles. Right. And so the fact that they may have removed the article or that it was only on their server, we don't know. Maybe they were planning on using it in a future article. The fact remains that they simply did not remove the infringement from their server. It was accessible. And if we're going to talk about things like image search and people who are infringing downstream infringements, it was publicly accessible. And a potential downstream infringer could see that, could say, hey, I like that photo. I'm going to take it. Can I ask you about the September 13th, 2016, upload date for the flashlight photo? Is your theory that the articles were published in 2015, but the photo wasn't added to them until 2016? So our theory, Your Honor, is that in September of 2016, the photo that we alleged in our original complaint and in our amended complaint was uploaded. Now, whether it was, and I know we refer to it as a re-upload, and I think from a practical perspective, that's probably what happened. It probably was uploaded originally and then, for whatever reason, re-uploaded. If I could speak to things that are not necessarily in the record, it looks like, you know, maybe they re-hosted their website somewhere else since it was probably re-uploaded to a new post. But the issue is that regardless of what happened prior to the allegation in the complaint, which we believe is reasonable given the exhibit and the specific facts that we allege, is that it was re-uploaded at that time, and so therefore it's a new infringement. It's a new violation, right? But is this essentially like your argument that just leaving it on the website is a new infringement or counts to toll the statute? I mean, I'm reading where you were saying, really, we can't tell that it was ever uploaded before, so we should count this as the first upload. Yeah, and that's true, Your Honor. We can't tell. I mean, I'm just telling you what I suspect to be true, and I see I'm going over on my time, so I'll be brief. I mean, is there a difference between your re-upload idea and your leaving it there idea? Yes, Your Honor. The re-upload, we need to think of it as a separate, distinct act of infringement. And so the leaving it up there idea, as Your Honor has phrased it, is, you know, we had an upload at some point previously, and then, of course, we have our arguments about why there's repeated distributions and displays based on the technological aspects of accessing a web page. But that's different than saying, you know, this is a new act of infringement, and whether they re-uploaded the same photo or it was a different photo before, we don't know, but the fact remains that on, you know, September of 2016, that photo, as you know, was taken, and that time frame was less than three months prior to when we initiated this lawsuit. Okay, we'll give you a couple of minutes for the bottom. Let's hear from your opponent. Good afternoon, Your Honors. May it please the Court? There's no dispute here. I think I just want to correct a couple or address a couple of points that Mr. Carrion made. There really is no dispute that the record comes to the Court seeking equitable relief from the fraud. Judge Barad properly found that on this particular and very full record, it wasn't plausible the appellant could meet its burden of establishing an entitlement to the three-year limit. So we have conceded burdens. It's not no set of facts. It's a plausibility question. Constructive knowledge is part of the test, and it's clear that Greco didn't plead any facts. He just said the Internet is big, which is inconsistent with other law. So Greco was charged with constructive knowledge here, and he had constructive knowledge. It's not general knowledge. Well, that argument depends on the flashlight photo being in the flashlight article from the start, right? If it wasn't actually added until 2016 and they weren't, then it isn't laden. They don't need any kind of tolling. Well, the pleading here, actually they do, so they didn't raise this as a separate act until December 2019, which was more than three years after the so they would need it as well. So if we consider the 2016 reupload idea to relate back, then it's not late if it's not a reupload, but an original upload. That's possible, but the fact that the pleadings themselves, and they had two chances to plead, they were very clear that these photos were up in articles in 2015, in two articles. They said that the articles came down, and then they said there was a server copy untied to any other article from 2016. So the pleadings themselves, I don't know how Mr. Carrion will be able to amend his complaint and not have it overridden by the other allegations that were already in the complaint, which were very clear that these were the two acts, the two articles they appeared in in 2015, that they were removed upon notice, but that at some point in time later, a copy ended up on the server, unattached to any article. So I don't believe you can... So I understand that the November 25th, 2020 decision, Greco versus Ziff Davis, doesn't have precedential value. But in order to rule in your favor on the flashlight photo, wouldn't we simply have to ignore that decision? I'm glad you asked that question, Your Honor. So I should let the court know that this decision has been subject to a petition for re-hearing and re-hearing... Yeah, I think we all saw that. Okay, great. So here's the difference, is that we had a very robust record in our case. We knew we wanted to make it very clear that Mr. Greco was on notice of this. So we put in a request for judicial notice. So instead of having two complaints, we actually had two complaints, plus this request for judicial notice that showed a few things. First, that the X-Files reboot was hugely publicized. Second, that Greco's own allegations throughout his pleadings said that he searches for his photos, he's actually sued over X-Files photos before the use, that he teaches people to search, he has AI-enabled technology, that he could access this stuff publicly. So there was a lot more in our record than there was there. And I think we're in agreement with the other side that this is all case-specific. Yeah, counsel, even if we gave you that, if we were to follow the other unpublished decision, it says here, it is not clear from the face of the First Amendment complaint that the copyright infringement claims were untimely. And to me, with regard to the flashlight photo, it is not clear from the face of the complaint that the claims were untimely. Yes, Your Honor. So the claims were, it is clear from the face of the record. So this request for judicial notice showed that the claims were untimely. Justice Ginsburg said a claim accrues as of the date of infringement. And so if the discovery rule applies, then that would be told, but there's a burden on that. So Greco said not only how, when he found the photo, but that it was possible to find this using a search, because he did find it. In fact, he found the hallway photo within nine months of the original article being posted. So this didn't take a lot of time. It was clear that on this record, he was charged with constructive knowledge. And he did not say, he didn't explain himself. We don't know why he didn't search before. We don't have any other idea. But the fact is, is that on the allegations that were made, there was constructive notice. And on the face of all the documentation we put in, his 73 lawsuits, everything else that it was clear. So counsel, basically the last line of the Greco-Ziff-Davis case is, on remand, the district court may order limited discovery that focuses on the statute of limitations question. I mean, obviously there's time and expense, but doesn't that protect you here if we were to order the same thing with regard to the flashlight photo? Sure. So the point here is that there have to be some facts pleaded. So as a matter of process, there have to be some plausible facts pleaded to suggest that constructive knowledge shouldn't be charged against the plaintiff. And so what we don't know is, what is he going to plead that explains it away? There are cases that say that just because something's on television or because it's on the radio or because it's on the internet, that's not an excuse to keep the clock from running. And we actually said, and Judge Barat expressly said to appellant, you need to give me some facts that I can look at to suggest that there's a basis for this case to go forward. It's not no set of facts. It's got to be a plausible claim. And on this record, based on the way the law applies, the test just hasn't been met. We have actual knowledge and we have these hypotheticals. And he never says, I could not have found this sooner. And in fact, when he amended with the hallway photo, he said, I could find this sooner. Can I ask you to go back to your answer that you gave me earlier about, I think you were saying that the original complaint, like basically precludes any reading that the flashlight photo wasn't already there in 2015. I think that's what you were saying. And I'm looking at the first complaint and I don't really understand what is so clear about that. Could you explain that? Sure. So the amended, the first in the amended, the originally amended complaint, talk about the articles being used, the photos being used in the articles, it ties them to the articles extensively. And then it says the articles came down and the photos that were in there came down, but then there was a re-upload. Well, that's the amended, but I thought you were saying that the original complaint didn't allow an interpretation that the, maybe I misunderstood your earlier answer, but I thought you were talking about the original complaint. I actually am not sure. I think I'm talking about the allegations generally in the record. So it might've been the original and might've been the amended. I believe that both that in both complaints, there was an allegation that they were used in these two articles. And then there was an allegation that they came down, but that one of the photos resides on the server. I'm just trying to understand what precludes the idea that the flashlight photo wasn't originally posted with these articles in 2016. I know the articles were published in 2015, but how do we know that it wasn't with a different photo for the first year? It's just, I, this is, it seems implausible and it's inconsistent. I mean, this is the first time I'm hearing any theory like this. So I don't know why there would be an article from 2015 on an online site that had different photos and then somehow new photos came in. This sounds a little bit implausible as well, but I believe that, I believe that it was understood by everybody that the allegation was that these articles were published with this, with this photo. And that that's what, once there was notice that the articles came down. I know I'm very tight on time. I am a little concerned about the continuing infringement issue. I'd be happy to address that briefly if possible. Yes, please. I was going to ask you to do that. Sure. And perhaps, but we did discuss this in our brief. This was raised, this wasn't raised below. And in fact, it was never raised. It was a Davis case in the briefing. But the point here is that, yes, claiming that it's leaving something somewhere is a volitional act of copyright infringement would create an endless statute of limitations that would only start running when someone said something about it. So we have the cases cited. I guess I don't view it that way. Counselor, I don't view it that way at all. I view it as a violation of the plaintiff's display right in the same way that we said in Perfect Ten that when you host a copy of a copyrighted work on your server and you make it available for other people to access via the internet, when those people then access whatever that copy is on your server and it's displayed on their computer screen, that's a violation of the plaintiff's display right. And it occurs, it seems to me it's a separate violation every single time that occurs. So they have alleged, at least potentially, that people were doing that all the way up through the filing of the complaint. So I would have assumed under Petrella that they could then use the three-year look-back period to capture whatever damages occurred in that three years. Now they can't go all the way back to 2015, I grant you that. But why can't they just go three years back from the filing of the complaint? Okay, so this actually is, the element that's missing is that there needs to be a volitional act. So under the Copyright Act, as FOX Broadcasting versus Dish Network 747 F3rd 1060 says, that for there to be direct infringement, a party has to do something, has to engage in a violation, has to commit an affirmative act. And all the courts who've looked at this have said, this is not an act of infringement, this is just leaving it up. So I would submit that coming out this way would be inconsistent with FOX versus Dish and all the other cases, including cable vision. What about Perfect 10? So Perfect 10 doesn't deal with the tolling of the statute of limitations. I know we addressed this in our briefing, and it doesn't, that's not what it's about. Perfect 10 is about- Counsel, counsel, hang on one second. I agree with you, it doesn't address statute of limitations, but it directly contradicts what you just said about what constitutes an infringing act in the online world. It says that if you host the copy of a copyrighted work on your server, and you allow other people to access it, and they do so, that you have committed direct infringement of the plaintiff's display right. If you host it, then if there is an act that causes a display, then that would be a volitional act of infringement. Isn't that what they've alleged you're doing here? Perfect 10, they have alleged it, Perfect 10 doesn't say whether a new claim accrues for purposes of each transmission. If something is left on a website, it is not being continuously infringed like a motion picture. You send it to the studio, or you stream it, or you do something with it. But Perfect 10 actually, and we note that APL microscopic doesn't apply in our brief at page 44. Perfect 10 doesn't address the separate accrual rule, doesn't address the statute of limitations. Sure, there was a volitional act in 2015. But that's the point here. And that's why it wasn't argued below. Because there really hasn't been any support for that theory. And there is no support in this circuit that would go directly to the issue of leaving something up and the infringement. Okay. Do either of my colleagues have other questions? No. Okay, very good. Thank you very much for your argument. Let's put two minutes on the clock for rebuttal. Thank you, Your Honor. Just to be brief. This is really a the statute of limitations question disguise. It's really, excuse me, this is really a rule eight question that's masquerading as a statute of limitations question. So Ms. Lackman states that oh, they didn't allege any reason why they couldn't discover the infringement earlier. And first of all, how do you allege a negative really? How do you we couldn't discover it earlier because we couldn't discover it earlier, right? And secondly, the more detailed that you get with requiring allegations, the higher the pleading standard is. And especially with respect to something like this, where there's, you know, technology that is very complicated. Now you're getting into potentially requiring someone to allege expert testimony in their complaint before discovery has been done before they've hired an expert to opine about the limitations of reverse image search. But in reality, the constructive knowledge standard requires knowledge that would put the copyright holder on notice that that specific infringer may be infringing. So general knowledge that copyright infringement happens on the internet, we all know it does, right, is not the same thing that as saying that Michael Greco Productions had constructive knowledge that BDG Media was infringing on his copyrights before he discovered the first infringement that was when we're talking about whether Mr. Greco has met the reasonable diligence standard, well, he doesn't have any reason to be diligent and to search BDG Media as opposed to anywhere else or to search for the X-Files photos as opposed to any of his other tens of thousands of photos, if he has no reason to specifically suspect that BDG Media itself is infringing. And so in closing, I just want to say that the district court should be reversed and this case remanded for further proceedings. Thank you. Okay, thank you very much. Thanks to you both for your arguments. The case just argued is submitted and we are adjourned for the day.
judges: Watford, Friedland, Bennett